IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ENERGY EXEMPLAR LLC AND EPIS, LLC, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 1:25-cv-00721 |
| AURORA ENERGY RESEARCH LIMITED AND AURORA ENERGY RESEARCH LLC, | § § § § § | |
| Defendants. | | |

### PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs Energy Exemplar LLC and EPIS, LLC (collectively, "EE" or "Plaintiffs"), by and through undersigned counsel, file this Original Complaint against Defendants Aurora Energy Research Limited and Aurora Energy Research LLC (collectively, "AER" or "Defendants") for trademark infringement and unfair competition and false designation of origin, and in support thereof, allege as follows:

### INTRODUCTION

1. EE is a business-to-business software as a service ("SaaS") platform and software company and a world market leader in simulation software and end-to-end energy modeling solutions.

2. EE has cultivated and enjoys an excellent world-wide reputation in its industry, including in the United States and Texas.

3. A vital part of EE's offerings and a contributor to EE's reputation and success is its AURORA energy forecasting software, which performs robust modeling and simulations for many

use cases, including power market price forecasting, energy portfolio analysis, optimized resource expansion, and power market risk analysis.

4. AER has knowledge of EE's AURORA software and related services, not only because of EE's reputation and distinction within the industry, but also because of previous business dealings between AER and EE's affiliate, Energy Exemplar (Europe) Ltd. ("EE Europe").

5. Furthermore, AER was required to show that it was not in competition with EE in order to register its "Aurora" marks after initial denial by the United States Patent and Trademark Office ("USPTO").

6. Nevertheless, AER now seeks to capitalize on the goodwill and reputation that EE has worked hard to develop by expanding into the energy modeling space in competition with EE using its trademarks that are confusingly similar and/or identical to EE's long-standing AURORA trademarks, in full knowledge that this encroachment constitutes infringement of EE's AURORA trademarks.

7. EE has been harmed and will continue to be subjected to increasing harm if AER is not enjoined from this infringement and unfair competition.

8. EE also seeks restoration of monetary damages suffered due to AER's exploitation of its AURORA trademarks.

## THE PARTIES

9. Plaintiff Energy Exemplar is a limited liability company organized under the laws of California.

10. Energy Exemplar's head office is located at 420 E. South Temple, Suite 300, Salt Lake City, Utah 84111.

11. Plaintiff EPIS is a limited liability company organized under the laws of Delaware and is wholly owned by plaintiff Energy Exemplar.

12. On information and belief, Defendant Aurora Energy Research Limited ("AER LTD") is a Limited Company incorporated under the laws of England and Wales, with its global headquarters located at St Aldates Chambers, 109-113 St Aldates, Oxford, Oxfordshire OX1 1DS, United Kingdom and will be served with process pursuant to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial documents in Civil and Commercial Matters pursuant to Fed. R. Civ. P. 4(f)(1).

13. On information and belief, Defendant Aurora Energy Research LLC ("AER US") is a Limited Liability Company organized under the laws of Delaware, with its principal business office located at 1023 Springdale RD, Building 15A, Austin, Texas 78721.

## JURISDICTION AND VENUE

14. This action arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, and under the laws of the State of Texas. This Court has subject matter jurisdiction over the claims for federal trademark infringement, false designation of origin, and unfair competition, pursuant to 15 U.S.C. §§ 1121, 1125 and 28 U.S.C. §§ 1331, 1338, and 1367. The Court has subject matter over the related Texas state law claims pursuant to 28 U.S.C. §§ 1338, 1367.

15. EE is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Defendant AER US because AER US conducts business in and maintains its principal place of business in Austin, Texas, thus being headquartered and residing within the State of Texas and this judicial district. AER US also conducts business within the State of Texas and this judicial district, and advertises, promotes, and/or sells goods and/or services under the mark "Aurora" in this judicial district.

16. EE is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Defendant AER LTD because AER LTD conducts business in and causes its

goods and/or services under the mark "Aurora" to be advertised, promoted, and/or sold in this judicial district. The causes of action asserted in this Complaint arise out of AER's contacts with this judicial district as well as its actions throughout the United States and AER has caused tortious injury to EE in this judicial district and has committed unlawful acts within Texas that have caused and/or will cause injury to the consuming public in Texas.

17. EE is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over AER LTD because the close relationship between AER LTD and AER US is such that AER LTD does business in the State of Texas and this judicial district through its relationship with AER US, which is headquartered in this judicial district, and AER LTD exerts a level of control over AER US as its alter ego entity that is sufficient to consider the two entities as one and the same corporation for purposes of jurisdiction.

18. In the alternative, this Court has personal jurisdiction over AER LTD under Fed. R. Civ. P. 4(k)(2) because AER LTD advertises, promotes, and/or sells goods and/or services under the mark "Aurora" in the United States and purposefully directs such activities towards the United States.

19. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) where AER resides in this judicial district and because a substantial part of the events or omissions giving rise to this action occurred in this judicial district. Venue is also proper in this judicial district under 28 U.S.C. §§ 1391(c)(3).

## STATEMENT OF FACTS

### EE and EE'S AURORA Marks

20. Founded in 1999 and with a global client base that includes governments, utilities, energy companies, independent system operators, technology companies, and consultants, EE is a

business-to-business SaaS platform and software company, and a leader in end-to-end energy modeling solutions.

21.     Plaintiff Energy Exemplar acquired plaintiff EPIS, LLC in 2017, including the AURORA platform, which complemented Energy Exemplar's existing PLEXOS software suite.

22.     The AURORA platform is an innovative fundamental energy market analysis model designed to forecast electric energy prices, market value of generating units, and market value of contract and portfolios.

23.     AURORA provides information on resource value, portfolio value, net power cost, risk and uncertainty analysis, and resource planning with unified functionality while also providing an easy to use, intuitive interface.

24.     The AURORA platform provides customers with flexibility in defining generator types and constraints, which allows robust analysis of emerging technologies.

25.     EPIS, LLC owns the federal registration for the trademark AURORA, United States Trademark Registration No. 2930504, as well as the federal registration for the trademark AURORA XMP, United States Trademark Registration No. 2826587.

26.     The AURORA mark was first used in commerce no later than February 27, 1997 and was registered on March 8, 2005.

27.     The AURORA XMP mark was first used in commerce no later than September 23, 2003 and was registered on March 23, 2004.

28.     Under its AURORA and AURORA XMP marks ("AURORA Marks"), EE offers goods and services classified under Nice classes 9 and 42, including (1) computer software for the energy industry, namely computer software for electricity price forecasting, generation valuation, portfolio analysis, risk analysis to quantify market uncertainties, and optimized resource

expansion; and (2) licensing of intellectual property, maintenance of computer software, computer programming services for others, technical support services, namely, troubleshooting of computer hardware and software problems and computer software consultation services for others, all for the energy industry.

29.     AER has had previous business dealings with EE and is therefore well aware of EE's use of its AURORA Marks in connection with computer software for the energy industry, including computer software for electricity price forecasting, generation valuation, portfolio analysis, risk analysis to quantify market uncertainties, and optimized resource expansion.

30.     Indeed, AER executed an End-User License Agreement with EE Europe for a multi-month detailed proof-of-concept trial of EE's software and software-related services.

31.     Moreover, on information and belief, AER has long been aware of EE and its products and services due to EE's prominence in the industry and excellent reputation for quality.

32.     EE's AURORA software has been used and discussed by scholarly, governmental, and industry papers and articles regarding energy modeling, price forecasting, and analysis using the AURORA marks.

33.     Due to this coverage and the longstanding use of the AURORA marks in connection with an excellent platform and superior services, including top-notch customer support and training as well as an exceptional user experience, EE enjoys significant goodwill in association with its AURORA marks.

34.     EE's AURORA Marks are arbitrary and thus inherently distinctive.

35.     EE's AURORA Marks predate and have priority over AER's "Aurora" marks.

**AER's "Aurora" Mark**

36. AER owns a stylized "Aurora" mark, U.S. Trademark Registration No. 7095304, registered on July 4, 2023 and reproduced below:

AUR☀RA

37. AER also owns the mark AURORA ENERGY RESEARCH, U.S. Trademark Registration No. 7057674, registered on May 23, 2023. AER's registered trademarks are hereinafter collectively referred to as the "AER Marks."

38. AER claimed a priority date of October 21, 2020 for the AER Marks, well after the dates that EE's AURORA Marks were registered in 2004 and 2005.

39. When AER filed the underlying trademark applications for the AER Marks on November 11, 2021, it requested extension of trademark protection to the United States for goods and services in Nice classifications 35, 36, 38, and 42.

40. For Nice classification 42, AER specified the following services that are identical or closely similar to services offered by EE under its AURORA Marks: Software as a service (SaaS); software as a service (SaaS) used to create, compile, publish, analyse and manage research, reports, data sets, surveys, plans and spreadsheets; platform as a service (PaaS); modelling as a service (MaaS); providing temporary use of non-downloadable software for collecting, measuring, tracking, monitoring, managing, analysing and reporting research, reports, data sets, surveys, plans and spreadsheets; providing temporary use of non-downloadable computer software for producing interactive data; hosting of podcasts; hosting of videocasts; environmental consultancy services; environmental monitoring services; environmental surveys; energy auditing; research in the field of the energy sector; research in the field of the renewable energy sector; research in the field of gas, carbon, oil and coal sector; research in the field of the hydropower sector; research in the field of electric vehicles; preparation of scientific reports; preparation of energy industry reports; all of the aforesaid services in relation to or in connection with commodities, non-renewable energy,

renewable energy, thermal power generation, energy storage, environmental markets and meteorology.

41. AER's trademark applications were initially refused by the Examining Attorney at the USPTO due to likelihood of confusion with several prior registered "Aurora" marks, including EE's AURORA Marks, under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).

42. During the trademark prosecution process, despite AER's arguments against likelihood of confusion, the Examining Attorney maintained refusal to register the AER Marks in Nice classes 36 and 42.

43. Ultimately, the Trademark Trial and Appeal Board ("Board") issued final refusals with respect to Nice classes 36 and 42.

44. AER did not appeal the Board's final refusals in Nice classes 36 and 42, and thus AER's trademark application was abandoned with respect to classes 36 and 42 via Examiner's Amendments.

45. AER's registration for the AER Marks issued on May 23, 2023 and July 4, 2023, respectively, in Nice classes 35 and 38, without registration in Nice classes 36 and 42. AER accordingly understood and its trademark registration represented and gave notice that AER would not use the AER Marks in connection with software and software services, thus avoiding confusion with EE's senior marks.

46. Despite only being able to obtain a U.S. trademark registration by omitting Nice class 42, AER has recently expanded its use of the word AURORA with software products and SaaS services in Nice class 42 that are similar or highly related to the modeling and price forecasting software products and SaaS services offered by EE under its AURORA marks.

47. In particular, on information and belief AER launched a power market modeling software product branded Aurora Origin in October of 2021.

48. On information and belief, AER than launched battery valuation analytics software branded Aurora Chronos in November of 2023.

49. On information and belief, AER also launched a wind valuation software branded Aurora Amun in October of 2024.

50. On information and belief, some or all of AER's AURORA branded software products and services are available for purchase in the United States.

51. On information and belief, all of AER's AURORA branded software products and services are marketed in the United States and AER plans to offer all of its AURORA branded software products and services in the United States in the near future.

52. Accordingly, AER is expanding its use of infringing "Aurora" branding into direct competition with EE and its senior AURORA marks, which have priority over AER's use of "Aurora" in the United States.

53. AER's marks are confusingly similar to EE's AURORA Marks, especially when used in connection with software and SaaS energy analysis, modeling, and price forecasting services that resemble and are highly similar to comparable services that EE has long offered under its AURORA marks, and such use of "Aurora" marks by AER is likely to cause confusion, or to cause mistake, or to deceive as to the origin of AER's products and services or suggest that AER is in some manner affiliated with EE, which is not the case.

54. EE brings the below claims to protect its AURORA Marks and its investment in the goodwill associated with its AURORA marks from AER's willful infringement and acts of unfair competition. EE has suffered and will continue to suffer irreparable harm unless AER is enjoined from using its infringing AER Marks.

### The Prior Business Dealings between the Parties

55. In fall of 2020, AER and EE Europe executed an End-User License Agreement for Energy Exemplar Software Products which allowed AER to gain access to some of EE's modeling and price forecasting software, ostensibly to conduct a proof-of-concept trial of such software for use in AER's business.

56. AER's trial was unusually long and detailed, with AER's representatives asking probing questions that went beyond the software's interface into its functionality and algorithms. AER's heightened scrutiny throughout the trial lengthened the typically two-week trial period into approximately three months.

57. Despite expressing a positive reaction to EE's software and services throughout the trial, at the close of the trial period AER abruptly informed EE that it would not be going forward and would be terminating the license agreement.

58. On information and belief, during the proof-of-concept trial, AER completed a private equity funding transaction, and shortly thereafter AER walked away from the proof-of-concept trial and began taking steps to compete with EE including through the sale of competing software.

59. Through its interactions and discussions with EE, as well as its extended trial of EE's products and services, AER gained extensive knowledge of the competitive space in which EE operates as well as the products and services EE offers in connection with its trademarks.

60. On information and belief, AER is using the knowledge gained from EE through its bad faith exploitation of the proof-of-concept trial to move into direct competition with EE's SaaS products and services in the United States under an identical mark, which is likely to cause confusion.

**FIRST CAUSE OF ACTION**

**(Federal Trademark Infringement under 15 U.S.C. § 1114(1))**

61. EE realleges and incorporates herein the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

62. EE owns valid registered trademarks in the word AURORA.

63. EE has priority in use and registration over the confusingly similar AER Marks where EE first used its AURORA mark in commerce in connection with computer software for the energy industry no later than February 27, 1997, more than two decades before AER adopted or contemplated use of "Aurora" marks in the United States.

64. AER is now using its infringing "Aurora" AER Marks in the United States in connection with software and software services that are identical, closely related to, overlap with, and/or are of the same type as EE's software products and services.

65. AER knew about EE's AURORA Marks and products and services under its AURORA marks before AER began to use any the AER Marks in connection with software products and related services in United States commerce.

66. EE's AURORA marks are arbitrary and presumptively and inherently distinctive when used in connection with computer software for the energy industry, including computer software for electricity price forecasting, generation valuation, portfolio analysis, risk analysis to quantify market uncertainties, and optimized resource expansion.

67. The word AURORA is arbitrary as used in EE's AURORA Marks because it is a common English word that carries no connection to the products and services that EE offers under its AURORA marks.

68. EE's AURORA Marks have regularly appeared in unsolicited third-party media articles connecting the word AURORA to EE's products and services.

69. EE's AURORA Marks have priority over AER's infringing AER Marks.

70. AER has expanded its use of the AER Marks and now uses its infringing AER Marks in U.S. commerce in direct competition with EE.

71. AER's use of the infringing AER Marks, in connection with AER's products and services, is likely to cause consumer confusion with EE's AURORA marks.

72. The AER Marks are highly similar to EE's AURORA marks in sight, sound, and meaning.

73. The AER Marks are identical in sound and meaning to EE's AURORA marks.

74. AER's products and services are similar and/or highly related to EE's products and services.

75. EE and AER market their products over similar channels, including over websites accessible throughout the United States.

76. AER's actions are likely to mislead the public into considering that AER's products and services originate with or are authorized by EE, which is not the case.

77. Both EE and the public will be damaged by the public's mistaken conclusion that AER's products and services originate with or are authorized by EE.

78. As an actual and proximate result of AER's trademark infringement, EE has suffered irreparable harm and damages including loss of income, profits, and goodwill, which irreparable injury will continue if AER is not restrained from further violation of EE's rights.

79. As an actual and proximate result of AER's trademark infringement, AER has and will continue to unfairly acquire income, profits, and goodwill.

80. EE has no adequate remedy at law.

81. Pursuant to 15 U.S.C. § 1117, EE is entitled to recover damages in an amount to be determined at trial, profits made by AER attributable to its use of its infringing AER Marks, and the costs of this action.

## SECOND CAUSE OF ACTION

### (Federal Unfair Competition and False Designation of Origin under 15 U.S.C. § 1125(a))

82. EE realleges and incorporates herein the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

83. AER's unauthorized marketing and sale of its products and services in United States commerce using AER's infringing AER Marks constitutes use of a false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of AER with EE, or as to the origin, sponsorship, or approval of AER's products and services by EE, which is not so.

84. AER's actions constitute federal unfair competition and violate 15 U.S.C. § 1125(a).

85. As a direct and proximate result of AER's unfair competition, EE has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and AER has and will continue to unfairly acquire income, profits, and goodwill.

86. AER's acts of unfair competition will cause further irreparable injury to EE if AER is not restrained by this Court. EE has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### (Cancellation of U.S. Trademark Registration Nos. 7,095,304 and 7, 057,674 under 15 U.S.C. § 1119)

87. EE realleges and incorporates herein the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

88. AER owns U.S. Trademark Registration No. 7095304 for the following service mark:

AUR☀RA

89. AER also owns the mark AURORA ENERGY RESEARCH, U.S. Trademark Registration No. 7057674, registered on May 23, 2023.

90. When AER filed the underlying trademark application for the above marks on November 11, 2021, it requested extension of trademark protection to the United States for goods and services in Nice classifications 35, 36, 38, and 42. For Nice classification 42, AER specified software and services, including SaaS services, that are identical or closely similar to services offered by EE under its AURORA Marks.

91. The USPTO examiner assigned to AER's application identified likelihood of confusion with previously registered AURORA marks, including EE's AURORA Marks, and initially denied registration.

92. Through the prosecution process, AER was able to obtain its registrations by the Examiner making an amendment and removing Nice class 42 and all references to offering software and SaaS products and services from its trademark description.

93. However, AER has now expanded use of its "Aurora" marks in United States commerce to include offering software and services within Nice class 42 in connection with its "Aurora" marks.

94. As a result of AER's inappropriate expanded use of its "Aurora" marks, the AER Marks are likely to cause confusion with EE's senior AURORA Marks.

95. Accordingly, the registrations for the AER Marks should be cancelled.

## FOURTH CAUSE OF ACTION

### (Texas Common Law Trademark Infringement and Unfair Competition)

96. EE realleges and incorporates herein the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

97. AER is using and has used the AER Marks in commerce in connection with the sale, offering for sale, distribution, and/or advertising of products and/or services in Texas.

98. AER's use of the AER Marks is likely to cause confusion, mistake, or deception as to the source of origin, sponsorship, or approval of AER's products and/or services.

99. Consumers are likely to believe that EE has authorized or approved AER's sale, offering for sale, distribution, and/or advertising of its products and/or services in Texas, or that AER is associated with or related to EE, due to AER's use of the AER Marks.

100. AER's actions of sale, offering for sale, distribution, and/or advertising of its products and/or services under the AER Marks have been committed deliberately and willfully, with knowledge of EE's rights and goodwill in its AURORA Marks, as well as knowledge of the priority of EE's AURORA Marks over the AER Marks.

101. AER has engaged in unlawful, unfair, or fraudulent business practices or acts, as described above, that have injured and will continue to injure EE and its business and property.

102. Upon information and belief, AER has acted in bad faith, including insofar as AER represented through its U.S. registration for its "Aurora" marks that the marks would not be used in connection with software and SaaS products and services in competition with EE, yet AER shortly after expanded into offering in U.S. commerce software and SaaS products and services similar to EE's products and services in direct competition with EE.

103. AER adopted its "Aurora" marks and obtained the registration therefor in full knowledge of EE's prior rights in its AURORA marks and AER is now using its "Aurora" marks

to compete with EE in willful disregard of EE's prior rights and EE's seniority in its AURORA marks.

104. In addition, AER engaged in an unusually lengthy, extensive, and probing proof-of-concept trial of EE's software products and services, in which AER's representatives asking probing questions that went beyond the software's interface into its functionality and algorithms, only to abruptly inform EE that it would not be going forward and would be terminating the license agreement.

105. Through its interactions and discussions with EE, as well as its extended trial of EE's products and services, AER gained extensive knowledge of the competitive space in which EE operates as well as the products and services EE offers in connection with its trademarks.

106. On information and belief, AER is using the knowledge gained from EE through its bad faith exploitation of the proof-of-concept trial to move into direct competition with EE's SaaS products and services in the United States under an identical mark, which is likely to cause confusion, or to cause mistake, or to deceive as to the origin of AER's products and services.

107. AER's above-described conduct constitutes infringement of EE's trademark rights and unlawful unfair competition in violation of Texas common law.

108. AER's aforesaid acts have caused, and unless restrained by this Court, will continue to cause, irreparable harm and injury to EE, including to the goodwill, reputation, and business associated with EE's AURORA marks, for which EE has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter judgment against AER as follows:

A. Permanently enjoining and restraining AER and all of its respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them, from using the AER Marks or any other confusingly similar mark, with or without an

accompanying logo, alone or combined with other words or symbols, as a trademark or trade name component or otherwise, to market, advertise, distribute or identify AER's services so as to create a likelihood of confusion, mistake, or deception with EE's AURORA marks;

B. Entering a judgment that AER violated 15 U.S.C. § 1114 by infringing upon EE's AURORA marks;

C. Entering a judgment that AER's use of the AER Marks constitutes federal unfair competition in violation of 15 U.S.C. § 1125(a).

D. Entering a judgment that AER violated Texas common law through trademark infringement and through its unlawful and unfair business practices in expanding into competition with EE and encroaching upon EE's competitive space using its "Aurora" mark in disregard of EE's seniority and prior rights in its AURORA marks.

E. Directing the United States Patent and Trademark Office, pursuant to Section 37 of the Lanham Act 15 U.S.C. § 1119, to cancel AER's federal registrations No. 7095304 and No. 7057674 for the AER Marks.

F. Directing AER to file with the Court and serve upon Plaintiff within thirty (30) days after the issuance of the Court's injunction, a report in writing and under oath setting forth in detail the manner and form in which AER has complied with the injunction, pursuant to 15 U.S.C. § 1116(a);

G. Requiring AER and all others acting under AER's authority, at their cost, to deliver up and destroy all devices, literature, advertising, labels and other material in their possession bearing the infringing designation, pursuant to 15 U.S.C. § 1118;

H. Awarding Plaintiffs actual damages and lost profits pursuant to 15 U.S.C. § 1117(a), sufficient to compensate Plaintiffs for the damage caused by AER's acts of trademark

infringement, false designation of origin, false association, and unfair competition, including, without limitation, loss of goodwill;

I. Awarding Plaintiffs damages in an amount to fully compensate all corrective advertising necessitated by AER's acts of trademark infringement, false designation of origin, and unfair competition;

J. Awarding Plaintiffs an accounting and disgorgement of all of AER's profits derived by reason of said acts, or as determined by an accounting;

K. Awarding Plaintiffs their attorney's fees pursuant to 15 U.S.C. § 1117;

L. Awarding Plaintiffs their costs associated with the prosecution of this action; and Granting Plaintiffs such further relief as the Court may deem just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all claims so triable.

Dated: May 13, 2025

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ C. Mark Stratton*
C. Mark Stratton
Texas Bar No. 19359200
Email: strattonm@gtlaw.com
Sydney Sgovio
Texas Bar No. 24131289
Email: Sydney.sgovio@gtlaw.com
300 West 6th Street, Suite 2050
Austin, Texas 78701
Telephone: (512) 320-7200
Facsimile: (512) 320-7210

***Attorneys For Plaintiffs Energy Exemplar LLC and EPIS, LLC***